Why are dogs so important to Jesus?      he stays in the house but he goes out I don't know why he's so important to Jesus Good morning, your honors. I'm Marty Day. I represent Rada Johnson. I think this is the most difficult case for me to argue that I've done in three four years. I think this case is bigger than Rada Johnson. I think it's bigger than Rada Johnson as an individual. I want to devote most of my time and reserve at least two minutes at the end of it for any closing. But with respect to Rada Johnson, I have to address the summary judgment just briefly. I think the record is pretty clear that summary judgment should not have been granted because there are issues of fact. For instance, on the one thing that court relied upon was a declaration of Mr. Foggy that says he didn't have to report the net proceeds or the proceeds from the lottery. I couldn't get to him because he was in the hospital. In your affidavit, you didn't give the dates as to when you could or could not get to him. Now can you tell us what those dates are? It was after the government filed a brief. I had to track him down. I had no address. The government had not given me any. No, don't tell me. I'm not sure exactly what. I want to know the dates because you offered nothing in that affidavit that would enable anybody to know when you were offering and when you were able to get to or not get to him. When I contacted him, he was incoherent. What time was that? That was about two weeks before my opposition was due. That was two weeks. Give a date, please. I don't even have the date, Your Honor. Well, I mean, your affidavit isn't very helpful without dates. Even if we go past that affidavit, there's still a question of fact because if you look at the document that Rita Johnson has him sign, he must report all 1099 income. Gambling winnings from a lottery is and the taxes are withheld at the source. So that statement, even if made, is a true statement. Why his retraction was so late? I think your your case is pretty weak. Well, because I could not. That's that's on the reconsideration. I couldn't. He was incoherent, as his declaration says. They thought he was going to die in a hospital. But you didn't give any dates as to when that when that happened. And I do not know when he went in sometime after the government got their declaration before I could get to him and locate him with no address, just a name. I did get a hold of the other one and found out, of course, the affidavit was wrong. But if you take his declaration, it is correct. It's a correct statement of law. You do not have to report the proceeds because the taxes are withheld at the source, as Rita Johnson says, and her documents shows she must they must report the 1099 income. That's just one thing. But again, I think the bigger gorilla in the courtroom must address is the constitutionality. And that's why I wanted the oral arguments of the direct funding of religion by the government through the tax code. This issue is right and properly before the court in this case, because to comply with the law, there must be a definition of religion as applied to the tax law. There's no question that the granting of a deduction for religious contribution is the same as a direct funding of a particular religion. That's in this case, as the IRS code says, it's approved by the IRS. They actually publish a list. They say this is that how big is that gorilla in the room? The U.S. Treasury Department has reported in 2004, 30 billion dollars, the same as direct funding. That is support for particular religions, as defined by the IRS in the code. And the IRS has a very particular criteria, none of which even Jesus Christ could have met. Why is all this a necessary discussion? Are you claiming that each one of these corporation souls is a religion? They are the corporation souls can be organized as a religion. Rita Johnson does not operate them. What are they doing here? But the individuals we have. Well, we've used some examples, for instance, Linda Carlson, which I think is a perfect example, happens to be a Mormon. Not the people who are involved here. Rita Johnson, all she is, is a registered agent and for people that she creates these for, she doesn't have to create a corporate soul for for all these people. Well, she did for thousands of dollars. What are they doing? Well, some of them she does. Some of them she doesn't for nothing. Let's say Corey Hopper, a blind minister in Philadelphia that ministers on the street. He doesn't need people involved here. I am. That's one that's involved. Linda Carlson, who brought together Jews, Christians and Islamic people to form a church to build an orphanage in Africa. She can't meet the IRS code. Therefore, she cannot be listed in publication as an approved IRS charity as a church. She doesn't qualify. And that is the problem. What's that? We're supposed to make her qualify. No, because you're I think your obligation, Your Honor, is to define what it is that is a religion as to how one qualifies. And this case is right. There's two cases I've added to and I've brought to bring to the court's attention that deals with this one specific issue. And that's Waltz versus Tax Commissioner of New York in Ingle versus Vitality. And I've given the court the citations for those in both those cases. The Supreme Court has recognized that the indirect deductions is a tax benefit that funds. And in fact, Justice Douglas, in the Ingle versus Vitality case, actually in the footnote in that case, says that he would find if it was before the court that it was unconstitutional. Our problem is the government is approving. I tell you that for my point of view, I don't think this has anything to do with the case before us. I believe it goes to the very heart of it because she forms corporation souls for religious purposes. There are abuses. There's no question. Somebody may come to her and say, Linda Carlson didn't. I mean, she's formed the kind of a church. Mr. Foster, you know what? I'm not sure other than I think he was running a shelter, a homeless shelter. But does she have to do this when the IRS cannot do it? I don't believe. And if I understood from him, he didn't take any deductions, but he was ministering. Thousands of dollars for this corporation soul to not take any deductions, he thought. I don't believe so. And people like Corey Hopper didn't even pay the minister in doing that. Your Honor, the religion issue is the heart of this case, and the constitutionality of it has to be defined. If Ms. Johnson is to comply with the law as she wants to, then she needs clear guidelines. And the IRS 14 points that supposedly defines what is a church, when you define with an objective standard 12 criteria that what makes a religion a church, by definition, you confine it within that area. And when you confine it within that area, you cannot accommodate the conscience of all religions in this. And the change of history has demonstrated that in the last 30 years. We have churches that no longer have buildings. We have churches on the Internet. And as the Supreme Court case, when you read the decision of Waltz and Engle, the justices, Justice Douglas actually points out that the 170 of the code, if it came before him, would be unconstitutional. And Rita Johnson is not expected to have to define the sincerity of one's belief before she forms a corporation sold for religious purpose. If you come to her with that, she can do it. And I would submit to this court that that is the heart of the case. I do not believe. Do you want to save a little time? I'm sorry. I will, Your Honor. A minute and six seconds. I really. And I will just point out, those cases all point to the fact that tax deductions are, in effect, subsidies. Here we have the government deeply involved in the subsidies of what the IRS says are bona fide religions. And by definition, that excludes what IRS says is not. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Andrea Tebitz, appearing on behalf of the United States. It's the government's position that religion is not an issue in this case. The constitutionality of Sections 170 and 501c3 of the Internal Revenue Code are not an issue. The worthiness of the activities of Rita Johnson's customers is not an issue. The tax status of Rita Johnson's customers, including whether or not Mr. Hopper takes deductions, is not an issue. The injunction that was granted in this case prevents Rita Johnson from making false statements about the tax benefits of corporations sold in the course of her activities. The only question before the Court on this appeal is whether the government established a violation of Section 6700 of the code such that it is entitled to that injunction under Section 7408. And within the elements of Section 6700, the only one in issue is whether Rita Johnson made false statements concerning the tax benefits of corporation souls because she did not, in fact, challenge any other aspect of the 6700 requirements. Until her motion for reconsideration when she said she had no reason, did not know or have reason to know that any statements she might have made were false. So the question, to narrow it down even more specifically, is was there a genuine issue of material fact as to the falsity of certain statements that she made to Mr. Forgey, since that is the only declaration that the district court relied on, and the answer to that is no. As an initial matter, I note that Ms. Johnson has said that she disputed Mr. Forgey's declaration in her own declaration, but I would just note that she did not, in fact, mention Mr. Forgey's declaration in her summary judgment opposition. She did mention it in her own declaration, but she certainly did not call the Court's attention to it. The Court nonetheless found that she did not present evidence refuting the government's showing of false statements, and in fact, to the extent that she attempted in her own declaration to dispute Mr. Forgey's statements, she really didn't dispute them. She talked around them. She said, I have no recollection of a conversation. I would not have said such and such. I understood this and that. He believed this and that, and I will get to the specifics of some of those points in a minute. You know, you've covered this in your brief. Excuse me? You've covered this all in your brief. Yes. You don't need to repeat it. All right. I just ---- I mean, we have your argument well in hand. If the Court doesn't have questions, I can ---- We don't. All right. Thank you. Then I will rest on the brief, and thank you for your time. Did I note that you went to Radcliffe? Yes, I did, when there still was a Radcliffe. That's a good place. I went to Harvard. Oh, thank you. And I believe you taught at Boston College as well, Mike. I once taught at each of those institutions. Thank you very much for your time, Your Honors. Well, one of the problems with the world today is we've got too many people from Harvard and Yale running things. And one of the problems with our country today is we've got too many people from Yale and Harvard running things. Not enough from Montana. OK? Thank you. Joe. I'm reminded of it as I count. Your Honor, I'll just take a few minutes, and I only got a guess less than a quarter of a minute. Don't take me seriously. I think even Fogarty's declaration has to be viewed in light of the other evidence, the documents, the other declarations, other people. The only evidence that Rena Johnson gave anything, she showed them the IRS code. I think the problem, and I'll come back to it, is we have an injunction that says she shall not violate or make false statements with respect to taxes and the corporation's souls. And that is a legitimate use of religion, and the court has refused to define it. I think the religion issue is the heart of this thing, because we would not know whether a person such as Linda Carlson, who combines Christian, Jews, and Islam together to hold hands and worship in the same church, violates the Internal Revenue Service's guidelines that you cannot have multiple denominations in the same church. Nor can she build an orphanage and worship her God that way, because the IRS says you must have a building. I would submit that goes to the heart of it. And I think the Waltz case and the Ingle case, the Supreme Court recognizes that. The question was, when is it right for the court? And I submit that with an injunction, this court's got to be very specific as to what she is prohibited to do. Can't she tell Linda Carlson? Wait, wait, you're repeating yourself. What's that? You're repeating yourself, and you owe us 24 seconds. I got that. Oh, we have 24 seconds. I apologize for that, Your Honor. And I do, as I say, it's the most difficult argument I've made, but I think it's the most important one. It's a good one. I noticed that your law school was listed as Armstrong College. That's correct. Where is that? Well, it was when it existed in Berkeley. I was a US Treasury agent for 12 years, went to school at night at the Knight Law School while still working as a criminal investigator for Treasury Department. When did it exist in Berkeley? 1974. I started in 1978. I graduated and passed the bar, and I think two years later, it was gone. There's only six of us in the world that are members of the bar. What's that? OK. Yeah. Where was it located? It was located in Berkeley. Where? Behind Hink's Department Store. Oh, yeah. What street was Hink's on? Hink's was on Shattuck in Berkeley, and it was a business school. They decided to start a law school and operated it for six or seven years. I came out of there and went right with US Attorney's Office. Passed the bar and everything else. No problem. Walked right into US Attorney's Office and started trying cases. Thank you, Your Honor, very much. Good for you. All right, that's submitted. Now we come to, we come to.
judges: Pregerson, Hall, Noonan